Filed 4/16/25  P. v. Cook CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY SHAWN COOK,<br><br>    Defendant and Appellant. | 2d Crim. No. B328578<br>(Super. Ct. No. F000183482)<br>(San Luis Obispo County) |

Timothy Shawn Cook appeals the trial court's order denying his petition for resentencing pursuant to Penal Code[1] section 1172.6 (former § 1170.95) concerning his 1992 willful, deliberate, and premeditated attempted murder conviction. Following an evidentiary hearing, the trial court found beyond a reasonable doubt that there was substantial evidence to support a finding of attempted murder pursuant to recent amendments to sections 188 and 189.  Cook now contends that the evidence is insufficient to support that finding.  We affirm.  (*People v. Reyes*

---

[1] All further statutory references are to the Penal Code.

(2023) 14 Cal.5th 981, 988 [substantial evidence review applies to section 1172.6 resentencing order].)

This appeal concerns crimes committed by Cook, Erik Lino, and Martin Barajas in San Luis Obispo, during and following their robbery of approximately $15,000 from La Cumbre Savings Bank on January 24, 1992. Cook and Lino each held firearms and entered the bank wearing face coverings. Barajas waited outside in the getaway vehicle. As Cook and Lino left the bank with stolen cash, they encountered San Luis Obispo Police Officer Victor Nunez. The men exchanged gunshots and Lino was wounded. Cook and Lino then forced a motorist from his vehicle and drove to Montana de Oro State Park. Police officers found and arrested them the following day. Officers also found the bank cash as well as a loaded .44 magnum revolver with a modified trigger pull that may have recently misfired. Earlier, officers arrested Barajas and found a stocking cap, a bloodstained passenger seat, and a recently fired .38 caliber firearm in the getaway vehicle.

*FACTS AND PROCEDURAL HISTORY*

In 1992, a jury convicted Cook of robbery (four counts), attempted robbery (three counts), assault (two counts), false imprisonment, and willful, deliberate, and premeditated attempted murder. (§§ 211, 664, 245, subds. (a)(2) & (d)(1), 236, 187, 664.) The jury also found that Cook personally used a firearm during commission of the crimes. (§ 12022.5, subds. (a) & (d).)

The trial court sentenced Cook to a prison term of 16 years six months to life imprisonment. (§ 664, subd. (a).) Cook appealed and contended, among other arguments, that insufficient evidence supported his conviction of willful,

2

premeditated and deliberate attempted murder. (*People v. Cook et al.* (May 10, 1994, B069296) [nonpub. opn.].) We rejected that contention, and affirmed the judgment. (*Ibid.*)

*Resentencing Petition*

On February 23, 2022, Cook filed a section 1172.6 petition for resentencing, having checked each box on the form petition. Cook also declared that his conviction for attempted murder rested upon a now-invalid theory of imputed malice. The trial court found that Cook made a prima facie showing for relief, issued an order to show cause, and subsequently held an evidentiary hearing in accordance with section 1172.6, subdivision (d).

The trial court received the evidentiary record of Cook's 1992 trial into evidence, including jury instructions, the trial testimony, and a portion of the preliminary examination transcript (Nunez's testimony). The court also received a transcript of Cook's 2019 parole hearing. The evidence revealed this:

In the afternoon of January 24, 1992, Barajas drove Cook and Lino to San Luis Obispo in Barajas's Chevrolet Blazer vehicle. At approximately 5:00 p.m., Cook and Lino entered La Cumbre Savings Bank wearing face masks. They jumped the bank counters and entered the tellers' work areas. Lino held a gun and demanded cash from each teller. He held the gun to the head of one teller as she opened the coin vault. At times Lino pointed the gun at other tellers. When Lino's cash bag tore, he took a teller's bookbag for the cash and coins. One teller gave Lino marked currency.

Cook approached the branch manager, Yvonne Cunningham, and stated that he did not want to hurt anyone,

3

but he would.  He informed her that he had a gun in his waistband and asked her to touch it.  Cook also asked if she wanted to be shot in the head.  Cunningham did not see the gun but did see a bulge in Cook's waistband.  She encouraged Cook to leave the bank.

Another teller noticed a shiny silver object in Cook's waistband.  As Cook and Lino ran from the bank, a teller saw Cook point and aim a gun at a man in the parking lot.  The man went down.

Officer Nunez drove to the bank after he heard a report of an armed robbery.  He took cover behind a metal recycling bin.  Nunez saw Cook and Lino, both armed, run from the bank.  Nunez identified himself as a police officer and ordered the two men to stop.  The men ignored Nunez and continued to run beyond Nunez's cover.  Nunez saw Cook turn in his direction, holding a revolver.  Lino made a similar motion, but Nunez could not see Lino's gun.  Nunez quickly fired five shots and struck Lino in the leg.  Immediately afterward, a shot struck the recycling bin.  Nunez called for assistance as Cook and Lino fled the parking lot.

Cook and Lino soon left Barajas's vehicle and then sought to take other vehicles.  Cook showed Kevin Gomes his gun and pulled on Gomes's locked truck door.  Gomes quickly drove away, unaware that Lino was in the truck bed.  Gomes soon stopped and Lino, injured and bleeding, jumped from the truck.  Cook took the automobile (a white Toyota) of another man who did not see a gun.  Cook and Lino then took the vehicle of yet another motorist at gunpoint by Lino, but that vehicle stalled.  Cook told another motorist that he had a gun and wanted his vehicle.  Cook threatened to shoot him and Cook dragged him from the vehicle.

That motorist reentered his vehicle, however, and Cook left. Cook and Lino fled in the white Toyota automobile that they had taken earlier.

Police officers caught and arrested Barajas in his Blazer vehicle. Inside, officers found a loaded .38 caliber revolver, a roll of coins, bloodstains, and a stocking cap. Later, it was determined that two bullets had been fired from the .38 caliber revolver, including the bullet fired in the recycling bin. The revolver contained hollow-point bullets. Lino purchased the firearm and its ammunition several weeks prior to the bank robbery.

The day following the robbery, police officers arrested Cook and Lino at Montana de Oro State Park. Officers recovered the stolen bank cash in the teller's bookbag and a .44 magnum revolver. The revolver's chamber contained six cartridges, three of which contained impact marks. The marks may have been on the cartridges when they were placed inside the gun or the marks may have been created by misfire.

The magnum revolver did not fire when police officers tested it. The weapon had been modified to lessen the trigger pull, thereby creating a more deadly weapon. Later, a criminalist was able to fire the revolver by a special action with the hammer cocked and the trigger vigorously pulled.

After Cook's arrest he was placed in a patrol vehicle with Barajas. Their conversation was recorded. Cook stated to Barajas, "We told you if the cops come we was gonna shoot 'em." During Cook's and Lino's preliminary examination, they were driven to court by sheriff's deputies. Cook sang a song with lyrics about shooting police officers without caring, and seeing their blood in the street.

On March 13, 2019, Cook attended a parole hearing. He stated that he took a loaded gun to the bank robbery because he had heard that "they have moon lighting cops sometimes in the bank."

The trial court denied Cook's resentencing petition after concluding beyond a reasonable doubt that Cook directly committed or alternatively aided and abetted attempted first degree murder.

Cook appeals and challenges the order denying resentencing.

*DISCUSSION*

Cook argues that the trial court erred by denying the resentencing petition because there is no evidence that he possessed the intent to kill. He points to the absence of evidence that he successfully fired his firearm.

Section 1172.6 was enacted to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Schell* (2022) 84 Cal.App.5th 437, 442.) Section 189, as amended, now provides that in cases where a death occurs during the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), a person is liable for murder only if the person was the actual killer, the person acted with intent to kill in aiding, assisting, or soliciting the killer, or if the person "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3); *Schell*, at p. 442.) Section 1172.6 was later amended to allow persons convicted of

6

attempted murder under the natural and probable consequences doctrine to apply for resentencing.  (Stats. 2021, ch. 551, § 2, subd (a).)

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Montanez* (2023) 91 Cal.App.5th 245, 270 [substantial evidence review following section 1172.6 evidentiary hearing]; *People v. Schell*, *supra*, 84 Cal.App.5th 437, 442 [same].)  We do not redetermine the weight of the evidence or the credibility of witnesses.  (*Ibid.*)  " ' "Conflicts and even testimony . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' ' " (*Montanez*, at p. 270.)

The crime of attempted murder requires evidence of the specific intent to kill.  (*People v. Mumin* (2023) 15 Cal.5th 176, 190.)  Whether the defendant possessed the specific intent to kill is a question for the trier of fact.  (*People v. Jackson* (1989) 49 Cal.3d 1170, 1201.)  There is rarely direct evidence of specific intent, which usually must be shown from the circumstances of the crime.  (*People v. Lashley* (1991) 1 Cal.App.4th 938, 945-946.)  That an attempt was unsuccessful does not establish that a defendant acted without intent to kill.  (*People v. Smith* (2005) 37 Cal.4th 733, 742.)

The trial court's conclusion that Cook directly participated in the attempted murder of Nunez is supported by substantial

7

evidence. Cook planned the bank robbery and took a loaded .44 magnum revolver to the bank. He explained at a later parole hearing that he took the weapon because banks sometimes employed moonlighting police officers as guards. Cook had modified the trigger pull on his weapon to make the weapon easier to fire. Cook stated to codefendant Barajas that his intent was to shoot any police officer who interfered with the robbery or getaway. He later sang a song indicating that he did not care if he shot a police officer. Cook and Lino waited to point their weapons at Nunez until Nunez was in full view, without cover from the recycling bin. As they ran in the parking lot, they carried their weapons parallel to the ground. Police officers who recovered the .44 magnum at the state park were unable to fire the weapon and suspected it may have misfired. This evidence of planning activity, motive, and method of attempted murder is substantial evidence of attempted willful, deliberate, and premeditated murder. The court did not err by denying resentencing relief.

In view of our discussion, we need not decide whether there is substantial evidence that Cook aided and abetted attempted murder.

## DISPOSITION

The order denying resentencing is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.          CODY, J.

8

Jesse J. Marino, Judge

Superior Court County of San Luis Obispo

———————————————

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.